**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| **NEFRA BURLOCK** on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**MERRILLVILLE COMMUNITY SCHOOL CORP,**<br><br>Defendant. | Case No.: 2:25-cv-471<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Nefra Burlock ("**Plaintiff**"), on behalf of herself and those similarly situated, by and through the plaintiff's attorneys, and brings the following against Defendant, Merrillville Community School Corp, ("**Defendant**"), pursuant to the Fair Credit Reporting Act ("**FCRA**").

## PRELIMINARY STATEMENTS

1. Plaintiff brings this action against Defendant for violations of the FCRA.

2. Defendant obtained information concerning the Plaintiff from a consumer reporting agency named Safe Hiring Solutions.

3. Defendant paid a fee for the information it obtained concerning the Plaintiff.

4. The information obtained concerning Plaintiff was a Consumer Report (as the term is defined pursuant to the FCRA).

5. Defendant relied on information in Consumer Reports to make decisions regarding Plaintiff, and on information and belief, Defendant relies on similar information from Consumer Reports to make decisions regarding other prospective or current employees, including, in whole or in part, as a basis for adverse employment action; such as a refusal to hire and/or termination.

6. Defendant took an adverse action based in whole or in part on the Consumer Report and failed to provide Plaintiff with the report prior to the adverse action.

7. In taking the adverse action, without first providing a copy of the Consumer Report, Defendant violated section 1681b(b)(3) of the FCRA.

8. Plaintiff seeks statutory damages, punitive damages, costs and attorneys' fees, and all other relief available pursuant to the FCRA.

**PARTIES**

9. Plaintiff is a resident of Crown Pointe, Indiana. Plaintiff is a member of the Putative Classes defined below.

10. Defendant Merrillville Community School Corp. is a domestic company doing business in Indiana and may be served by serving its Superintendent Dexter Suggs, Ph.D, at 6701 Delaware St., Merrillville, IN 46410.

11. On information and belief, Defendant employs more than 800 individuals and has over 6,000 students.

**JURISDICTION AND VENUE**

12. This court has jurisdiction over Plaintiff's FCRA claim pursuant to 28 U.S.C. § 1331.

13. Venue is proper in this Court pursuant to § 28 U.S.C. § 1391. Plaintiff resides in Indiana applied to work for Defendant in Indiana and her claims arise in substantial part in Indiana. Defendants regularly conduct business in Indiana and is subject to personal jurisdiction in this district.

## LEGAL AUTHORITY

14. Section 1681b(b)(1) of the FCRA dictates when a consumer reporting agency may provide a Consumer Report to an employer for employment purposes as follows:

> (A) the person who obtains such report from the agency certifies to the agency that—
>
> > (i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and
> >
> > (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation; and
>
> (B) the consumer reporting agency provides with the report, or has previously provided, a summary of the consumer's rights under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) [1] of this title.

15. The purpose of the FCRA certification is to have the consumer reporting agency act as a gatekeeper who protects the consumer's personal information and before releasing the personal information to an employer requires the employer to certify that the protections the FCRA affords consumers will be afforded to the consumer.

16. Absent the certification from the employer, the consumer reporting agency is legally required to deny access to the consumer's personal information.

17. Section 1681b(b)(2)(A) of the FCRA regulates the conduct of persons who obtain a Consumer Report about employees or prospective employees as follows:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> > (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

18. The purpose of the disclosure is to place the consumer on notice that a Consumer Report may be obtained as part of the application process.

19. The purpose of the authorization is to allow the consumer to consent to the lawful use of the consumer's personal information for limited purposes.

20. Section 1681b(b)(3) regulates the conduct of any person who used a Consumer Report to take an adverse action based in whole or in part on the Consumer Report against any employee or prospective employee as follows:

> Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
>
> (i) a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) 1 of this title.

21. The purpose of Section 1681b(b)(3) is to provide an employee or prospective employee a reasonable amount of time to review the Consumer Report, to address any incomplete, inaccurate, or misleading information in the Consumer Report, to allow the target of the Report to notify the employer of the errors or misleading part of the Consumer Report before the adverse action is taken and to discuss the contents of the Consumer Report with the prospective employer.

## FACTUAL ALLEGATIONS

22. Plaintiff applied online for employment with Defendant in or about late August or early September of 2024 through Indeed.com.

23. Plaintiff received an email setting up an online interview.

24. Plaintiff was offered a second interview a couple of days later that would take place in person.

25. Plaintiff's in-person interview took place with four different ladies.

26. Plaintiff received a job offer approximately one or two days after the in-person interview.

27. Plaintiff signed and returned the job offer and completed Defendant's onboarding paperwork.

28. On information and belief, the onboarding paperwork only included a 15 U.S.C. §1681b(b)(2) disclosure that Defendant may obtain a consumer report, but not an authorization to procure a Consumer Report.

29. The FCRA disclosure and authorization requirements are two separate distinct requirements.

30. Plaintiff received an email update several days after signing the job offer that stated Defendant was still waiting on the Plaintiff's background check.

31. Plaintiff received a phone call she believes on a Tuesday around 10 a.m. from a person named Reid, an employee of Defendant, who informed Plaintiff that, due to unidentified information in her Consumer Report, the job offer was withdrawn.

32. Plaintiff unsuccessfully attempted to contest the decision over the phone without seeing a copy of the Consumer Report.

33. Without seeing the contents of the Consumer Report the Plaintiff could not address any misleading, incomplete or inaccurate information that appeared in the Report.

34. For example, Plaintiff had a charge pending against her, but she was never convicted because the charges were dismissed soon after the report was issued, but Plaintiff never

got the opportunity to contest or explain the situation.

35. To be clear, Plaintiff does not have a criminal record.

36. Nevertheless, Defendant never provided Plaintiff with an opportunity to contest or explain the situation.

37. Denying Plaintiff employment because of information in her Consumer Report is an adverse action as defined pursuant to the FCRA, which creates an injury in law.

38. Plaintiff requested a copy of the Consumer Report from Reid but did not receive a copy of the Consumer Report.

39. Plaintiff expected to hear something more regarding her employment status from Defendant but never heard anything regarding steps on how to challenge the decision.

40. Plaintiff attempted to contact Defendant multiple times after the adverse action to request a copy of her Consumer Report and find out how to challenge the decision, but her calls were never returned.

41. Plaintiff has never received a copy of her Consumer Report from Defendant.

42. Plaintiff does not know what information is listed on the Consumer Report that caused Defendant to take adverse action.

43. Plaintiff did not authorize the obtaining of a Consumer Report.

44. Defendant's actions fundamentally undermined the fairness and transparency the FCRA was designed to protect, and it caused Plaintiff to suffer both tangible losses—including the loss of a job opportunity—and intangible injuries such as loss of dignity, uncertainty about the future, and frustration over being denied a fair process.

45. Defendant's failure to abide by the FCRA requirements accompanied with the termination of employment caused Plaintiff embarrassment, emotional distress and duress.

46. Defendant's failure to provide Plaintiff with a copy of the consumer report and a summary of rights under the FCRA prior to taking adverse employment action deprived Plaintiff of a critical opportunity to understand her rights and review, contest, explain and/or dispute the information being used against her. As a direct result of this failure, Plaintiff was left confused and unaware of the basis for the denial of employment, how to challenge the action, or if she could challenge the action. Plaintiff's lack of knowledge regarding her rights created significant emotional distress and anxiety.

47. On information and belief, Defendant obtained a Consumer Report concerning Plaintiff from Safe Hiring Solutions for employment purposes.

48. On information and belief, Safe Hiring Solutions required Defendant to certify pursuant to 15 U.S.C. §1681b(b)(1) before obtaining a Consumer Report that the FCRA protections provided by 15 U.S.C. §1681b(b)(2) and §1681b(b)(3) would be followed by the Defendant.

49. Defendants' actions have denied Plaintiff the opportunity to review, contest, or explain the contents of the Consumer Report.

50. Plaintiff would not have authorized the Defendant to procure her Consumer Report if she had known that Defendant would not comply with the mandates of the FCRA.

51. Plaintiff would not have allowed Defendant access to her personal information if she had known that her personal information would be used in violation of the law.

52. Taking an adverse action based on the plaintiff's Consumer Report, without first providing a copy of the Consumer Report to Plaintiff, exceeded the limited consent provided by the plaintiff, and therefore Defendant violated the FCRA.

53. Defendant exceeded plaintiff's limited consent when the information contained in

the Consumer Report was used in a manner that violated the law.

54. Plaintiff only allowed access to her Consumer Report for limited employment purposes.

55. The illegal use of Plaintiff's personal information is akin to a breach of trust.

56. Defendant had a legal obligation akin to a trustee of Plaintiff's consumer report to act in the best interests of the Plaintiff by allowing her an opportunity to review the personal and private information prior to any adverse action.

57. Defendant breached Plaintiff's trust by failing to fulfill the company's obligations in a way that violated the terms of the law and the authorization which set standards of conduct expected of the defendant.

58. Defendant would not have had access to the Plaintiff's private and personal information without obtaining a copy of the report prior to taking any adverse action.

59. The illegal use of the Plaintiff's personal information is an injury in fact.

60. Defendant's actions deprived Plaintiff of her right to challenge and/or dispute the information in the Consumer Report.

61. Plaintiff lost the opportunity and ability to explain the information in the Consumer Report before the adverse action.

62. On information and belief, Defendant certified to the consumer reporting agency that the consumer report was obtained for employment purposes. Pursuant to the FCRA, Consumer Reporting Agencies may not provide a third-party entity, like Defendant, with a Consumer Report without first receiving a 15 U.S.C. §1681b(b)(1) certification.

63. On information and belief, Defendant certified to Safe Hiring Solutions that it would not use Plaintiff's Consumer Report in violation of any applicable federal or state equal

employment law or regulation.

64. On information and belief, Defendant certified to Safe Hiring Solutions that it would abide by 15 U.S.C. §1681b(b)(3) if that section became applicable.

65. On information and belief, Defendant contractually agreed to abide by 15 U.S.C. §1681b(b)(3) (i.e., to provide a copy of the report to the applicant prior to taking adverse action) and other notice provisions if allowed access to Plaintiff's information.

66. Defendant's certification was false because the company did not abide by the FCRA adverse action requirements.

67. Defendant violated the provisions of 15 U.S.C. §1681b(b)(3) when it failed to provide Plaintiff with a copy of her Consumer Report before taking adverse action.

68. On information and belief, Safe Hiring Solutions would not have provided Defendant access to Plaintiff's Consumer Report if Defendant had failed to certify that it would abide by the FCRA adverse action procedures.

69. Defendant's actions deprived Plaintiff of a meaningful opportunity to invoke the discretion of the decision maker before the job offer was withdrawn.

70. Defendant violated its statutory and contractual obligations by systematically violating the provisions of the FCRA despite having received the benefits of obtaining regulated information concerning Plaintiff.

71. Defendants exceeded any authorization provided by Plaintiff.

72. Any authorization provided by Plaintiff was akin to a contract in which Plaintiff allowed Defendant access to her personal information expecting Defendant to provide the protection ensured by the FCRA in exchange for access to private and personal information.

73. Defendant's procurement of the plaintiff's Consumer Report violated the good faith

and fair dealing required in every contract.

74. Defendant breached the party's covenant of good faith and fair dealing when it used Plaintiff's alleged authorization to procure her Consumer Report then failed to provide her with a copy of the Consumer Report.

75. Defendant breached the party's covenant of good faith and fair dealing when it used Plaintiff's alleged authorization to procure her Consumer Report then failed to provide her with an opportunity to review, dispute, explain, and/or address the information in the Consumer Report.

76. Plaintiff did not receive the protections she was entitled to by law and contract because of Defendant's actions.

77. Defendant is aware of the FCRA because, on information and belief, Defendant executed a certification with the consumer reporting agency that requires Defendant to abide by the requirements of the FCRA.

78. Defendant knew that it must comply with the FCRA, but Defendant failed to comply with such obligations.

79. Defendant's violations of the FCRA combined with its knowledge of the requirements of the FCRA are evidence that Defendant's violations were reckless.

80. The manner in which Defendant took adverse action against Plaintiff is consistent with its policies and procedures.

## CLASS ACTION ALLEGATIONS

81. Plaintiff asserts the following proposed classes:

> **ADVERSE ACTION CLASS:** All natural persons residing within the United States and its Territories who were the subject of a consumer report used by Defendant for employment purposes within the previous five (5) years before Plaintiff filed this Complaint through the conclusion of this matter, and suffered an adverse employment action by the Defendant, but were not provided a copy of the report and/or a written summary of their rights under the FCRA before the adverse action notice.

**CERTIFICATION CLASS:** All individuals who were the subject of one or more Consumer Reports in which Defendant falsely represented that it would comply with 15 U.S.C. §1681b(b)(3) for the period of the previous two years prior to the date of filing, through the conclusion of this matter.

**AUTHORIZATION CLASS:** All individuals who were the subject of one or more Consumer Reports in which Defendant exceeded the authorization obtained from applicants for the period of the previous two years prior to the date of filing, through the conclusion of this matter.

**Numerosity**

82. The proposed classes are so numerous that joinder of all members of each class is impracticable. Defendant, who employs more than 800 people, regularly obtains and uses information in Consumer Reports to conduct background checks on prospective employees and existing employees. Defendants regularly obtain Consumer Reports via false certifications and relies on the information therein, in whole or in part, as a basis for adverse employment action. Given the nature of Defendant's business, Plaintiff believes that during the relevant time period, at least 50 individuals would fall within the definition of the classes.

**Common Questions of Law and Fact**

83. Virtually all of the issues of law and fact in this class action predominate over any questions affecting individual members of each class. Among the questions of law and fact common to each class are:

a. Whether Defendant uses the information in an individual's Consumer Report to take adverse actions;

b. Whether Defendant violated the FCRA by taking adverse action against Plaintiff and other Putative Class Members on the basis of information in a Consumer Report without first providing a copy of the report;

c. Whether Defendant obtained Consumer Report via a false 15 U.S.C. §1681b(b)(1) certification;

d. Whether Defendant's actions exceeded the scope of the authorization;

e. Whether Defendant's actions were reckless; and

f. The proper measure of damages.

**Typicality**

84. Plaintiff's claims are typical of the members of each proposed class. The FCRA violations suffered by Plaintiff are typical of those suffered by other members of each class. Defendant typically uses Consumer Reports to take adverse actions but fails to provide the consumer with a copy of the report before taking an adverse employment action based on information contained in said report. Additionally, before being provided with the Consumer Report Defendant certified that the report would be used for employment purposes and to abide by §1681b(b)(2) and (3). The FCRA violations suffered by Plaintiff are typical of those suffered by other members of each class and Defendant treated Plaintiff consistent with other members of each Putative Class in accordance with its standard policies and practices.

**Adequacy of Representation**

85. Plaintiff, as representative of the classes, will fairly and adequately protect the interests of the classes and has no interest that conflict with or are antagonistic to the interest of the members of each class. Plaintiff has retained attorneys competent and experienced in FCRA class action litigation. No conflict exists between Plaintiff and members of each class.

**Superiority**

86. A class action is superior to any other available method for the fair and efficient adjudication of this controversy, and common questions of law and fact overwhelmingly predominate over individual questions that may arise.

87. This case is maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure because prosecution of actions by or against individual members of each Putative

Class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual member of each class's claim as a separate action will potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

88. This case is maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure because Defendant has acted or refused to act on grounds that apply generally to the classes, so that any final relief is appropriate respecting the classes as a whole.

89. Class certification is also appropriate under Rule 23 of the Federal Rules of Civil Procedure because questions of law and fact common to each Putative Class predominate over any questions affecting only individual members of each Putative Class, and because a class action is superior to other methods for the fair and efficient adjudication of this litigation. Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of each Putative Class do not have an interest in pursuing separate actions against Defendant, as the amount of each individual member of each class's claims is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result the inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiencies, it would be desirable to concentrate the litigation of all members of each Putative Class's claims in a single forum.

90. Plaintiff intends to send notice to all members of each Putative Class to the extent required by Rule 23 of the Federal Rules of Civil Procedure. The names and address of the potential members of each class are available from Defendant's records.

**Count I**
**Adverse Action**

91. Plaintiff incorporates the foregoing paragraphs 9-90 as if fully set forth herein.

92. Defendant obtained Consumer Reports concerning the Plaintiff and the Adverse Action Class.

93. Defendant used the Consumer Reports to take adverse action against the Plaintiff and the Adverse Action Class.

94. Defendant violated the FCRA by failing to provide Plaintiff and the Adverse Action Class with a copy of their reports before taking adverse action.

95. Defendant violated the FCRA by failing to provide the Plaintiff and the Adverse Action Class with a reasonable time to address the information in their reports.

96. Defendant violated the FCRA by failing to provide the Plaintiff and the Adverse Action Class with a reasonable time to dispute their reports.

97. Had Defendant complied with the FCRA, Plaintiff and the Adverse Action Class would have been given time to review, explain, dispute and/or otherwise address the information contained in the Consumer Reports.

98. Plaintiff and the Adverse Action Class would have never permitted the Defendant to obtain a copy of their Consumer Reports had they known that the Defendant employed a policy to take adverse action in violation of the FCRA.

99. Plaintiff and the Adverse Action Class would have never permitted the Defendant to obtain a copy of their Consumer Reports had they known that the Defendant would deny them the opportunity to dispute their Consumer Report before any adverse action.

100. Defendant's failure to comply with the unambiguous mandates of the FCRA injured the Plaintiff and the Adverse Action Class.

101. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the Adverse Action Class.

102. Defendant's reckless conduct is reflected by, among other things, the following facts:

a. Defendant has access to legal advice through outside employment counsel;

b. The Defendant has ignored regulatory guidance from FTC Informal Staff Opinions and the unambiguous language of the FCRA;

c. 15 U.S.C. §1681b(b)(1) required the Defendant to certify that the protections of 15 U.S.C. §1681b(b)(3) would be followed; and

d. Defendant entered a contract in which they contractually agreed to abide by the FCRA's adverse action requirements.

103. Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1000 for each and every one of these violations, pursuant to 15 U.S.C. §1681n(a)(1)(A).

104. Plaintiff and the Adverse Action Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. §1681n(a)(2).

105. Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. §1681n(a)(3).

**COUNT II**
**Authorization Violations**

106. Plaintiff incorporates the foregoing paragraphs 9-90 as if fully set forth herein.

107. Defendant obtained a Consumer Report concerning the Plaintiff and the Authorization Class under false pretenses.

108. Plaintiff and the Authorization Class would have never permitted the Defendant to obtain a copy of their Consumer Reports had they known that the Defendant was obtaining

Consumer Reports in violation of the FCRA.

109. Plaintiff and the Authorization Class would have never permitted the Defendant to obtain a copy of their Consumer Reports had they known that the Defendant's alleged disclosures were misleading.

110. Plaintiff and the Authorization Class would have never permitted the Defendant to obtain a copy of their Consumer Reports had they known that the Defendant's alleged authorizations were misleading.

111. Plaintiff and the Authorization Class would have never authorized the Defendant to obtain a copy of their Consumer Reports if they had known that the Defendant would violate the provisions of the FCRA, was obtaining Consumer Reports in violation of the law, and had a policy, pattern, and practice to take adverse actions in violation of the FCRA.

112. Defendant exceeded the scope of its purported disclosure and authorization and violated the rights of the Plaintiff and the Authorization Class.

113. Defendant's actions exceeded the scope of the Plaintiff and the Authorization Class's consent.

114. Plaintiff and the Authorization Class's consent only allowed access to their Consumer Reports for lawful actions.

115. Defendant's violations of the Plaintiff and the Authorization Class's adverse action rights are a violation of law.

116. The foregoing violations were reckless.

117. Defendant acted in deliberate or reckless disregard of its obligations and rights of Plaintiff and the Authorization Class under the provisions of the FCRA. Defendant's willful conduct is reflected by, among other things, the following facts:

a. Defendant has access to legal advice through outside employment counsel;

b. The Defendant has ignored regulatory guidance from FTC Informal Staff Opinions and the unambiguous language of the FCRA; and

c. 15 U.S.C. §1681b certification, addresses the requirement of obtaining and using a Consumer Report.

118. Plaintiff and the Authorization Class are entitled to statutory damages of not less than $100 and not more than $1000 for each and every one of these violations, pursuant to 15 U.S.C. §1681n(a)(1)(A).

119. Plaintiff and the Authorization Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. §1681n(a)(2).

120. Plaintiff and the Authorization Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. §1681n(a)(3).

## Count III
## Certification Violations

121. Plaintiff incorporates the foregoing paragraphs 9-90 as if fully set forth herein.

122. Consumer Reporting Agencies are legally prohibited from providing employment related Consumer Reports without first obtaining the certifications required by 15 U.S.C. §1681b(b)(1).

123. Prior to obtaining an applicant's Consumer Report for employment purposes the Defendant was required to provide to the Reporting Agency certification of the purpose and that FCRA protections would be abided by per 15 U.S.C. §1681b(b).

124. According to the provisions of 15 U.S.C. §1681b(b)(1), Defendant cannot obtain an applicant's Consumer Report until they have certified that they have complied with the mandates of 15 U.S.C. §1681b(b)(2).

125. According to the provisions of 15 U.S.C. §1681b(b)(1), Defendant cannot obtain

an applicant's Consumer Report until they have certified that they will comply with the mandates of 15 U.S.C. §1681b(b)(3) if that section becomes applicable.

126. According to the provisions of 15 U.S.C. §1681b(b)(1), Defendant cannot obtain an applicant's Consumer Report until they have certified that information from the Consumer Report will not be used in violation of any applicable federal or state equal employment opportunity law or regulation.

127. On information and belief, prior to obtaining a Consumer Report concerning the Plaintiff and the Certification Class, the Defendant certified that they had complied with 15 U.S.C. §1681b(b)(2) and would comply with 15 U.S.C§1681b(b)(3) if that section became applicable.

128. On information and belief, prior to obtaining a Consumer Report concerning the Plaintiff and the Certification Class, the Defendant also certified that information would not be used in violation of any applicable Federal or State equal opportunity employment law or regulation.

129. Defendant knew that it would not comply with the mandates of 15 U.S.C. §1681b(b)(1) prior to obtaining a copy of the Plaintiff and the Certification Class's Consumer Reports.

130. Defendant therefore made false certifications to obtain and use Consumer Reports for employment purposes.

131. The provisions of 15 U.S.C. §1681b(b)(1) are intended to protect the privacy rights of the Plaintiff and the Certification Class.

132. The provisions of 15 U.S.C. §1681b(b)(1) are intended to protect the Plaintiff and the Certification Class's statutory right to review protected information.

133. Plaintiff and the Certification Class were injured by the Defendant's practice of

obtaining Consumer Reports via false certifications.

134. Absent the Defendant's false certifications, the Defendant would not have gained access to the Plaintiff and the Certification Class's Consumer Report, and the Plaintiff and the Certification Class would not have been denied employment.

135. Plaintiff and the Certification Class would have never permitted the Defendant to obtain a copy of their Consumer Reports if she had known that the Defendant would violate the provisions of the FCRA, was obtaining Consumer Reports in violation of the law and had a pattern, policy, and practice of taking adverse action in violation of the FCRA.

136. Moreover, Plaintiff and the Certification Class would have never permitted the Defendant to obtain a copy of the Consumer Reports had they known that the Defendant would deny them the opportunity to dispute their Consumer Reports before any adverse action.

137. Defendant's failure to comply with the unambiguous mandates of the FCRA injured the Plaintiff and the Certification Class.

138. The foregoing violations were done in reckless disregard of the law.

139. Defendant acted in deliberate or reckless disregard of its obligations and of the Plaintiff and the Certification Class's rights.

140. Defendant's reckless conduct is reflected by, among other things, the following:

a. Defendant has access to legal advice through outside employment counsel;

b. The Defendant has ignored regulatory guidance from FTC Informal Staff Opinions and the unambiguous language of the FCRA; and

c. Defendant made certifications per 15 U.S.C. §1681b(b)(1) that it purposely violated.

141. Plaintiff and the Certification Class are entitled to statutory damages of not less than $100 and not more than $1000 for each and every one of these violations, pursuant to 15

U.S.C. §1681n(a)(1)(A).

142. Plaintiff and the Certification Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. §1681n(a)(2).

143. Plaintiff and the Certification Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. §1681n(a)(3).

**WHEREFORE,** the Plaintiff respectfully requests that this Court issue an Order for the following:

a. Holding that this action may proceed as a class action under Rule 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure;

b. Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Classes;

c. Directing proper notice to be mailed to the Putative Classes at Defendant's expense;

d. Finding that Defendant committed multiple, separate violations of the FCRA for each Putative Class Member;

e. Finding that Defendant acted recklessly in deliberate or reckless disregard of Plaintiff and the Putative Class Members' rights and its obligations under the FCRA;

f. Awarding statutory damages and punitive damages as provided by the FCRA;

g. Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

h. Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## Demand for Jury Trial

Plaintiff hereby demands a jury trial on all causes of action and claims.

Date: October 9, 2025

Respectfully submitted,

By: /s/ *Amina A. Thomas*
Amina A. Thomas
Lynn A. Toops
**COHENMALAD, LLP**

One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenmalad.com
athomas@cohenmalad.com

Jayson A. Watkins (*pro hac vice* forthcoming)
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, New York 10151
816-281-7162
MAIN: 888-SIRI-LAW
jwatkins@sirillp.com

Attorneys for Plaintiff